# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

### CASE NO. 19-24843-CIV-ALTONAGA/GOODMAN

MARIA SAENZ ALVARADO,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATIONS ON SUMMARY JUDGMENT MOTIONS

This case challenges a denial of an application for the continuation of Disability Insurance Benefits. Plaintiff Maria Saenz Alvarado and Defendant Andrew M. Saul, Acting Commissioner of the Social Security Administration ("Commissioner"), filed cross-motions for summary judgment. [ECF Nos. 16; 21]. The Commissioner's summary judgment motion also served as his opposition response to Saenz Alvarado's motion. [ECF No. 22]. Saenz Alvarado did not file a reply/response in opposition and the time to do so has long passed. According to the Clerk's directive in these types of administrative appeals, all dispositive matters have been referred to the Undersigned for a Report and Recommendations. [ECF Nos. 2; 5].

As explained below, the Undersigned **respectfully recommends** that the District Court **deny** Saenz Alvarado's summary judgment motion, **grant** the Commissioner's

summary judgment motion, and **enter a final judgment** in the Commissioner's favor.

I.     **Procedural Background**

Saenz Alvarado was 37 years old when she was determined to be disabled in October 2008, 45 years old on the date that her disability ended, and 47 years old on the date of the ALJ's decision. (R. 32). She has a limited education, is able to communicate in English, and has no past relevant work. (R. 32). She alleged she was disabled due to depression, anxiety, fibromyalgia, and hypothyroidism. (R. 319).

In a March 11, 2011 decision (referred to herein as the comparison point decision, "CPD"), an ALJ found Plaintiff had been under a disability since her amended alleged onset date of October 23, 2008, because her mental impairments medically equaled Listing 12.04. (R. 139-45).

However, as of July 1, 2016, the agency determined that Saenz Alvarado was no longer disabled. (R. 23, 148-71). The determination to cease Saenz Alvarado's disability insurance benefits ("DIB") was upheld on reconsideration after a hearing by a state agency disability hearing officer. (R. 23, 172, 193-97, 199-206). Following the cessation of her disability benefits at both the initial and reconsideration levels, Saenz Alvarado requested an administrative hearing, which was held on October 10, 2018. (R. 41-63, 217-218). After the administrative hearing before ALJ Tracey Liebowitz (R. 41-63), in a decision dated January 16, 2019, under § 223(f) of the Social Security Act (the "Act"), the ALJ found Saenz Alvarado's disability ended as of July 1, 2016, and determined that she

had not become disabled again through the date of the decision. (R. 17-40). Saenz Alvarado's request for review of the ALJ's decision was thereafter denied by the Appeals Council on September 25, 2019. (R. 1-8). Accordingly, that decision became the Commissioner's final decision. Saenz Alvarado alleges that her disability has continued and seeks judicial review of the administrative proceedings under 42 U.S.C. § 405(g). (R. 201); [ECF No. 16-1, p. 2].

**II.     Factual Background**

Saenz Alvarado was born on April 26, 1971 and was 37 years old when she was found to be disabled in October 2008. (R. 47). Saenz Alvarado was 45 years old on the date her disability ended, and 47 years old on the date of her hearing and the ALJ's decision. (R. 32). She received a tenth-grade education in Nicaragua, is able to communicate in English, and has no past relevant work. (R. 32, 47, 61). Saenz Alvarado stated that she does not perform housework, she goes grocery shopping with her husband and daughter when she "feel[s] good," and she drives by herself to see her doctor once or twice a month. (R. 51-52, 55, 56). Her husband calls her throughout the day to make sure that she is taking her prescribed medicine. (R. 52). Saenz Alvarado has been hospitalized before due to depression, feeling guilt, and feeling worthless. *Id.* In 2017, she attempted to commit suicide by overdosing on pills. *Id.*

### III.  Applicable Legal Standards

#### A.  *Standard of Review*

In evaluating a claim for disability benefits, an ALJ must follow the five steps outlined in 20 C.F.R. §§ 416.920(a) and 404.1520, which the Undersigned summarizes as follows:

1. **Step one**. Is the claimant performing substantial gainful activity? If not, then an ALJ next determines:

2. **Step two**. Does the claimant have one or more severe impairments? If the claimant does, then an ALJ next considers:

3. **Step three**. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled; if not, then an ALJ must determine claimant's residual functional capacity ("RFC"); and then determine:

4. **Step four**. Based on the RFC, can claimant perform his or her past relevant work? If so, then the claimant is not disabled. If the claimant cannot perform his or her past relevant work, then an ALJ must finally determine:

5. **Step five**. Based on the claimant's age, education, and work experience, and the RFC, can he or she perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See, e.g.*, *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In reviewing the decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether substantial evidence in

4

the record supports her findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240 n.8 (internal citation omitted). The Court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citation omitted). And "[i]f the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (internal citation omitted).

The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n.13 (11th Cir. 2000).

### IV.   The ALJ's Findings

In denying Saenz Alvarado's claim for benefits, the ALJ followed the sequential five-step evaluation process for social-security claims. (R. 23-34). At step one, the ALJ concluded that Saenz Alvarado had not engaged in substantial gainful activity from the date of her alleged disability onset of October 23, 2008, through the date of the ALJ's decision on January 16, 2019. (R. 24-25).

At step two, the ALJ concluded that since July 1, 2016, the date that the agency ended Saenz Alvarado's disability insurance benefits, Saenz Alvarado has had the

following medically determinable impairments: affective mood disorder, posttraumatic stress disorder, fibromyalgia, hypothyroidism, cervical stenosis, and vertigo. (R. 25). At step three, the ALJ concluded that Saenz Alvarado does not have an impairment or combination of impairments classifiable as a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 25).

Next, the ALJ determined that Saenz Alvarado has the RFC to perform light work with limitations as described below:

> [t]he claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant should never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch and crawl. She can have occasional exposure to extreme cold, extreme heat and hazards. She is limited to performing simple, routine tasks that can be learned in 30 days or less. She can have occasional interaction with supervisors, co-workers, and the public.

(R. 30).

At step four, the ALJ noted that Saenz Alvarado does not have any relevant past work experience. (R. 32). Lastly, at step five, aided by testimony from the vocational expert ("VE"), Heidi Feder, the ALJ found that "the claimant was capable of making a successful adjustment to work that existed in significant numbers in the national economy," including a housekeeping cleaner, marker, and ticketer. (R. 33-34). Accordingly, the ALJ found that Saenz Alvarado's "disability ended on July 1, 2016, and she has not become disabled again since that date." (R. 34).

**V.    Analysis**

Saenz Alvarado raises two arguments in her summary judgment motion. [ECF No. 16-1]. First, Saenz Alvarado argues that her activities of daily living and medical regimen are not inconsistent with her allegations of disabling pain and fatigue caused by her fibromyalgia and her allegations of severe depression and anxiety related to her major depressive disorder. *Id.* at pp. 11-22. Second, Saenz Alvarado argues that the ALJ's discounting of her treating psychiatrist's opinion is not supported by substantial evidence. *Id.* at pp. 23-25. For the reasons discussed below, the Undersigned does not find Saenz Alvarado's arguments to be persuasive.

**A.    The ALJ Properly Determined that Saenz Alvarado's Subjective Allegations Were Not Entirely Consistent with the Evidence of Record.**

Alvarado argues that the ALJ failed to properly assess her subjective symptoms of pain and limitations due to her alleged disabilities. The Undersigned disagrees. "[C]redibility determinations are the province of the ALJ, and [a court] will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (internal citations omitted) (finding ALJ's credibility determination to be supported by substantial evidence where ALJ "pointed to specific reasons for discrediting [the claimant's] subjective complaints of disabling pain"); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) ("[W]e find that the ALJ made a reasonable decision to reject [the claimant's] subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so.").

Here, the ALJ found that Saenz Alvarado's daily activities were inconsistent with her complaints and allegations. (R. 31). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect of the claimant's ability to work. *See* 20 C.F.R. 404.1529(c), (d). The ALJ evaluated the alleged intensity and persistence of Saenz Alvarado's alleged symptoms and found that the evidence does not support the level of symptom intensity that she has alleged.

In evaluating Saenz Alvarado's subjective complaints, the ALJ first analyzed her objective medical records. (R. 27-30); *see* 20 C.F.R. § 404.1529(c)(2) (providing that the ALJ may consider the objective medical evidence in evaluating a claimant's subjective complaints). The ALJ noted that the records from February 2015 through June 2018 do not show that Saenz Alvarado

> had any problems with memory or concentration in her mental status examinations during this period. [ ] The overall longitudinal records show that there have been no hospitalizations or episodes of decompensation due to her emotional impairments, expect for an inpatient hospitalization at Palmetto General Hospital on October 2017, after she tried to hurt herself by overdosing on her medication. These records show the claimant's hospitalization was uneventful and she improved with treatment. It was noted that during her hospitalizations, she did not advise that she had any issues or concerns except for a desire to be discharged.

(R. 27). After her hospitalization, Saenz Alvarado met with a neurologist who found that

8

she was "stable and her mental exam findings were unremarkable." (R. 28). In analyzing her Citrus Health Network records from 2016 through 2018, the ALJ also noted that Saenz Alvarado's condition was stable, she was less anxious, she reported improved sleep and energy, she had no side effects from her medication, she reported an improvement in her PTSD symptoms, and she stated that she had no suicidal or homicidal ideations. *Id.* Additionally, her mental status exam findings continued to be unremarkable. *Id.*

Regarding the physical impairments of fibromyalgia and hypothyroidism, the ALJ noted that her radiological tests from 2016 show that Saenz Alvarado has a thyroid disease. *Id.* While Saenz Alvarado was diagnosed with depression, anxiety, fibromyalgia, and hypothyroidism in her June 2016 exam records from Pierre-Richard Edouard, M.D., she was found to have a normal heart rate and rhythm, clear lungs, a soft non-distended abdomen, a normal range of motion for all joints besides her lumbar and hip flexion, normal muscle strength for all muscle groups, and normal gait. *Id.*

After Saenz Alvarado visited the hospital in January 2017 with complaints of chest pain, the ALJ noted that her exam results came back normal, but she was diagnosed with chest pain and palpitations related to anxiety for which she was prescribed medication. *Id.* Following that visit, in February 2017, Saenz Alvarado had a normal chest x-ray, a CT scan that was negative for any cardio-pulmonary processes, and a normal ultrasound besides a fatty infiltration of the liver. (R. 29).

After describing the medical records in detail, the ALJ summarized the records as

follows:

> She has clinical diagnoses of major depression with psychotic features, anxiety, fibromyalgia and hypothyroidism. At a recent mental status examination, the claimant reported her condition was stable and she denied having side effects from medication. She reported she is less anxious and has improved sleep and energy. Upon examination, she was alert and fully oriented. Her speech was spontaneous and coherent. She denied having suicidal or homicidal ideation. The longitudinal records show that there have been no hospitalization or episodes or decompensation due to her emotional impairments, except for one psychiatric hospitalization when the claimant tried to overdose with her medication; however, notes during her hospitalization show she improved with treatment. In addition, at a recent physical examination, she had a normal heart rate and rhythm. Her lungs were clear to auscultation. Her abdomen was soft and non-distended. There was tenderness of her lumbar spine, hips and knees with a positive straight leg raise test bilaterally. Range of motion is normal of all joints except for a lumbar flexion and hip flexion. She had normal muscle strength of all muscle groups. She had a normal gait. Functional information shows that she avoids social contact; however, she is able to perform her personal care independently. She does some light house chores and drives to nearby destinations.

(R. 29-30).

Given that the ALJ has provided specific reasons for discrediting Saenz Alvarado's subjective complaints, supported by the evidence described above, the Undersigned "will not disturb a clearly articulated credibility finding supported by substantial evidence." *See Mitchell*, 771 F.3d at 782.

### B. The ALJ Provided Good Cause for Discounting the Opinion of Saenz Alvarado's Treating Psychiatrist.

Saenz Alvarado argues that the ALJ erred by affording only partial weight to the opinions of her treating psychiatrist, Dr. Marcos Cintron. [ECF No. 16-1, p. 23]. The

Undersigned disagrees because the ALJ provided good cause for discounting Dr. Cintron's opinions in his assessment of Saenz Alvarado when compared to his treatment notes showing unremarkable mental status exam findings.

Generally, an examining or treating physician's opinions are given more weight than non-examining or non-treating physicians' opinions unless "good cause" is shown to the contrary. *See* 20 C.F.R. § 404.1527(d)(1)-(2); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" is shown where the treating physician's opinion was not bolstered by the evidence, was conclusory or inconsistent with the physician's own medical records, or where the evidence supported a contrary finding. *Wilcox v. Soc. Sec. Admin, Comm'r*, 442 F. App'x 438, 440 (11th Cir. 2011); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (holding that because "the ALJ articulated several reasons for giving less weight to the treating physician's opinion[,] . . . the ALJ's determination that [the doctor's] opinion should be given little weight is supported by substantial evidence").

There is no reversible error if the ALJ articulates the reasons for giving less weight to the treating physician's opinion, as long as those reasons are supported by substantial evidence. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

Here, the ALJ's cited reasons for providing only partial weight to Dr. Cintron's opinions are supported by substantial evidence. The ALJ states that she is providing "partial weight" to the "opinion of Dr. Cintron [ ] because the limitations he attributed to

11

the claimant are not supported by his treatment records that overall show unremarkable mental status exam findings." (R. 32); *see also* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

The ALJ noted that Dr. Cintron opined that Saenz Alvarado's mental impairments only moderately limited her ability to understand, remember, and carry out short, simple instructions and her ability to make judgments on simple, work-related decisions. (R. 30). Similarly, the ALJ found that Saenz Alvarado maintained the capability to perform simple, routine tasks that could be learned in 30 days or less. *Id.*

In support of the partial weight assessment, the ALJ cites to Dr. Cintron's opinion that Saenz Alvarado was extremely limited in her ability to respond appropriately to work pressures. (R. 30, 996). Nevertheless, Dr. Cintron's own treatment notes from mental status examination and routine medication follow-ups demonstrate that Dr. Cintron found Saenz Alvarado to have mild to normal symptoms. (R. 28, 910-19). Dr. Cintron made note that Saenz Alvarado was alert and oriented, properly dressed and groomed, with good hygiene, displaying good eye contact, and not showing psychic distress or expressing suicidal ideation. (R. 910-19). Dr. Cintron noted that Saenz Alvarado had no new mental health concerns, was tolerating her medications well, and her current treatment continued to provide her relief. (R. 913, 914, 916). In April 2018, Dr.

Cintron recommended psychotherapy, but Saenz Alvarado does not appear to have followed through with the referral. (R. 912).

While Dr. Cintron noted that Saenz Alvarado had limitations in her ability to interact with supervisors, co-workers, and the public, Dr. Cintron's treatments notes consistently found that she was cooperative and made good eye contact. (R. 26, 32, 910-19, 996). Given these consistent normal examination findings at every appointment with Dr. Cintron, his opinion that Saenz Alvarado had marked social limitations and extreme limitation in her ability to respond to work pressures appears to be inconsistent. (R. 996); *see Moreno v. Saul*, No. 18-CV-23971-LOUIS, 2020 WL 3312357, at *7 (S.D. Fla. Mar. 31, 2020) (finding that because the treating psychiatrist's notes in fact contradicted his opinions, the ALJ supportably found that the opinion was not entitled to controlling weight).

Accordingly, the Undersigned finds the ALJ's rationale for providing partial weight to Dr. Cinton's opinions to be supported by substantial evidence. *See Bryant v. Colvin*, 661 F. App'x 686, 692 (11th Cir. 2016) (holding that good cause supported the ALJ's decision to give little weight to the treating physician's opinion where the opinion was inconsistent with treatment records and not supported by the evidence in the record); *see also Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 528 (11th Cir. 2015) (internal quotations omitted) (holding that ALJ did not err in discounting medical opinion as "inconsistent with the other medical evidence" where "the treatment records []

13

consistently documented that the claimant was oriented to person, place, time and situation, affect animated, speech was clear and coherent, her thought processes were logical and goal-directed, and her insight and judgment were fair").

## VI. Conclusion

The Undersigned **respectfully recommends** that the District Court **deny** Saenz Alvarado's summary judgment motion, **grant** the Commissioner's summary judgment motion, and **enter a final judgment** in favor of the Commissioner.

## VII. Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d

790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

   **RESPECTFULLY RECOMMENDED** in Chambers, Miami, Florida, on January 5, 2021.

                   _____
                   Jonathan Goodman
                   UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Cecilia M. Altonaga
All counsel of record